## POLLOCK v. MABEY et al., Board of Corrections.

No. 4132.   Decided May 6, 1924.   (226 Pac. 186.)

1.  CONVICTS—DUTY OF OFFICERS TO PROVIDE MEANS BY WHICH STATUTES RELATING TO EMPLOYMENT OF PRISONERS MAY BE PUT INTO EFFECT.  Under Comp. Laws 1917, §§ 5455, 5481, and 9173, it is the duty of state officers charged with prison control, if possible, without contravention of Constitution or other statute, to provide means by which those laws relating to employment of prisoners can be carried into effect.

2.  CONVICTS—PROVISION FOR EMPLOYMENT OF PRISONERS HELD NOT CONFLICTING WITH STATUTORY REQUIREMENT.  A resolution passed by the board of corrections, providing for manufacture of garments by inmates of prison, *held* not in conflict with Comp. Laws 1917, § 5455, subd. 4, requiring employment so provided to be most beneficial to state and best suited to capacities of prisoners.

3.  CONVICTS—CAPACITIES OF PRISONERS NOT CONTROLLING IN SELECTING EMPLOYMENT.  The capacities of prisoners is not the only consideration that must guide in selection of employment for them, and board having that duty should be allowed much latitude in exercise of sound discretion.

4.  STATUTES—SHOULD NOT BE INTERPRETED SO AS TO DEFEAT PURPOSE.  Statute limiting an administrative commission or body should not, if avoidable, be interpreted so as to defeat practical application of duties imposed.

5.  CONSTITUTIONAL LAW—WISDOM IN SELECTION OF EMPLOYMENT FOR PRISONERS NOT REVIEWABLE BY COURTS.  Whether board of corrections has exercised wisdom in selection of particular industry for employment of prisoners is not subject to review by courts, in absence of a showing that spirit of statute has been violated.

6.  CONVICTS—RESOLUTION PROVIDING FOR PRISON GARMENT FACTORY HELD NOT VIOLATIVE OF STATUTE AGAINST UNNECESSARY COMPETITION WITH CITIZENS OF STATE.  A resolution providing for the establishment of garment factory for employing of prisoners *held* not violative of Comp. Laws 1917, § 5475, requiring selection of an industry which would interfere as little as possible with industry of citizens of state where only 60 per cent. of garments used within the state of kind to be manufactured were of domestic manufacture.

7. CONVICTS—BOARD OF CONTROL VESTED WITH DISCRETIONARY POW-
ERS IN MATTER OF EMPLOYMENT OF PRISONERS WITH WHICH COURT
SHOULD NOT INTERFERE. The board of control in the matter of
providing prison employment is vested with discretionary
powers with which the court should not interfere.

Prohibition proceeding by W. R. Pollock against Charles
R. Mabey and others, as the Board of Corrections of the State
of Utah, to restrain the carrying into effect certain resolution.

ALTERNATIVE WRIT QUASHED, AND PROCEEDING DISMISSED.

*I. E. Willey,* of Salt Lake City, for plaintiff.

*Harvey H. Cluff,* Atty. Gen., for defendants.

GIDEON, J.

This is an original proceeding in this court seeking to re-
strain the defendants, constituting the board of corrections
of the state of Utah, from carrying into effect the provisions
of a certain resolution adopted at a meeting of said board
held on March 28, 1924. The plaintiff is a citizen and tax-
payer of the state.

It is stated in the complaint that the defendants, in adopt-
ing the resolution and in proceeding to carry out the terms
of the same, ''are acting without and in excess of the powers
and jurisdiction of said defendants as said board, and in con-
travention and against the common law and against public
policy, and such acts, proposals and proceedings are viola-
tive of chapter 12, title 100, Compiled Laws of Utah 1917,
and particularly sections 5475, 5476, 5477, 5478, 5479, there-
of.'' It is further stated that carrying into effect the terms
of the resolution will entail an expense of approximately
$25,000 and other considerable outlay of money, thereby in-
creasing unlawfully the burdens of taxation upon the plain-
tiff and other taxpayers of the state.

The resolution is made a part of the complaint. We here
insert the preamble and the resolution:

"Whereas the Legislature of 1923 appropriated the sum of two thousand ($2,000) dollars for the establishment of work and industrial shops at the state prison and the board of corrections has already made an investigation as to the probable cost and expense necessary to establish a garment factory for the manufacturing of overalls and such other clothing as they deem advisable from time to time in the state prison;

"And whereas, in order to establish such factory it will be necessary to have more funds, and accordingly this board made special request of the board of examiners that a deficit be allowed in the sum of twenty-five thousand ($25,000) dollars, to enable them to proceed with the establishment of such factory;

"And whereas, the board of examiners has already allowed such deficit and this board of corrections has proposed to establish such factory as soon as possible;

"And in pursuance of said intention negotiations have been begun with certain manufacturing establishments in the east for the installment of sixty (60) machines and other necessary equipment, costing approximately fifteen thousand ($15,000) dollars:

"Now, therefore, be it resolved by the board of corrections that the warden of the state prison be and he is hereby authorized to establish a garment factory within the walls of the state prison of Utah, and in order to operate this factory is authorized to use the prisoners at said state prison as necessary labor in the manufacturing of such garments, provided, that in the conduct and management of said factory said warden complies with the laws of the state of Utah relating to prison labor. That said warden be authorized, for the purposes herein stated, to purchase sixty (60) machines, said sixty (60) machines and other necessary equipment costing approximately fifteen thousand ($15,000) dollars, and said warden is further authorized to prepare a suitable building, within the walls of said state prison, for the installation of said machines and to use as many of the prisoners as will be necessary, working eight (8) hours per day, as provided by law, to turn out approximately fifty (50) dozen garments per day, and the said warden is hereby further authorized to enlarge said factory, from time to time, until every prisoner within said prison, who is mentally and physically qualified, will be employed at some sort of labor, and that as the factory is enlarged various kinds of goods will be manufactured.

"Said board of corrections do hereby, by unanimous vote, authorize the entering into a contract with the Singer Sewing Machine Company of New York and the Union Special Machine Company of Chicago for the purchase of said sixty (60) machines above referred to, and the installation of the same in said state prison, and the purchasing of such raw material and supplies as may be necessary or required by said factory, to cost approximately

twenty-five thousand ($25,000) dollars, and that this work be proceeded with as rapidly as possible.

"Said warden is hereby authorized, under the direction of this board, to sell the product of said factory to other state institutions of the state of Utah, and the surplus, if any, may be sold in the open market without restriction."

Upon filing the verified complaint an alternative writ of prohibition was issued. The Attorney General appeared on behalf of the defendants and filed a general demurrer alleging that the complaint does not state facts sufficient to entitle plaintiff to any relief.

The briefs have been filed and oral arguments had. In this state of the record the matter has been submitted to this court for decision.

The plaintiff does not claim that the action proposed by the resolution is violative of the Constitution, but does claim that the acts authorized by the resolution are in contravention of the statutes of the state, particularly chapter 12, title 100. The sections relied upon will be referred to in the course of this opinion.

By the provisions of section 5445, Comp. Laws Utah 1917, the government and control of the state prison is vested in the board of corrections. This board consists of the Governor of the state and two other resident citizens. By section 5450 the board is authorized to appoint a warden. The qualifications of the warden are prescribed in that section. The sections of the statutes upon which reliance is had as being in contravention of the provisions of the resolution are as follows:

Section 5455, so far as it affects the question here under consideration, is:

"It shall be the duty of the warden under the rules and regulations adopted by the board for the government of the prison: * * *

"(4) To use every proper means to furnish employment to prisoners most beneficial to the state and best suited to their several capacities;

"(5) To superintend any manufacturing and mechanical business that may be carried on by the state, pursuant to law, within the prison; to receive the articles manufactured, and to sell and dispose of the same for the benefit of the state."

Sections 5472 and 5475 read:

"The warden shall also have authority, under such regulations as the board may adopt, to employ convicts in the erection or repair of the buildings or walls of the prison, or in the prison farm."

"It shall be the duty of the prison board to meet at least once in six months to determine what lines of productive labor shall be pursued in the prison, and in so determining the board shall select diversified lines of industry with reference to interfering as little as possible with the same lines of industry carried on by citizens of this state. No contract shall be made for the labor of prisoners confined in the state prison, but they shall be employed by the warden under rules and regulations established by the board."

Sections 9173 and 5481, Comp. Laws Utah 1917, relating to the punishment of those convicted of public offenses, provide:

"9173. In all cases when by law a person is sentenced to imprisonment either in the state prison or in a county jail, it shall be at hard labor, whether so designated by the court or jury or not."

"5481. All convicts, other than such as are confined in solitude for misconduct in the prison, shall as far as practicable be kept constantly employed at hard labor for an average of not less than eight hours a day, Sundays and holidays excepted, unless incapable of laboring by reason of sickness or other infirmity."

The sections of the statute last quoted impose the duty upon the officers of the state charged with the government and control of the state prison to provide, if possible, means by which those requirements of the law can be carried into effect. In doing that the officers must not contravene any of the provisions of the Constitution or statutes of the state. As pointed out, it is not claimed by the plaintiff here that the proposed acts do contravene or are in conflict with any provision of the Constitution. The question, therefore, for determination in this case, is: Do the acts proposed by the resolution contravene any of the provisions of our statutes?

It is insisted that the arrangement proposed by the resolution is in conflict with subdivision 4 of section 5455, supra, in that the means to be employed for furnishing employment to the prisoners do not take into account such employment as is most beneficial to the state and best suited to the several

capacities of the different prisoners. In the conduct and control of the prison the peculiarities or the different capacities of the various prisoners confined in the state prison cannot be, and was not intended to be, the only consideration to guide the board of corrections in determining the means of furnishing employment to the prisoners. In the practical application of the powers given, much latitude **2, 3** must be allowed the members of the board in the exercise of sound discretion. The court is not justified in holding, from the record before us, that due consideration was not given by the board to the requirements of this subdivision, nor that the employment proposed is not best suited to the various capacities of the prisoners. In the very nature of things, that is a duty that must very largely be left to the board of control.

It is also argued that in adopting the resolution the board has run contrary to the provisions of section 5475, supra, in that 'it has not selected diversified lines of industry and has not selected an industry that will as little as possible interfere with an industry carried on by certain citizens of the state. The statute does not limit, or attempt to limit, the number of prison inmates that may be employed in any particular industry. It is only provided that the means of employment shall be such as is best suited to their several capacities; that the governing board shall determine the line of productive labor to be pursued and select such diversified industries with as little interference as possible with the same lines of industry carried on by the citizens of the state. At the present time no manufacturing industry **4** of any kind is being conducted in the state prison; neither are any of the inmates engaged in a manufacturing enterprise. The section of the statute quoted gives the board the undoubted right to employ the inmates in manufacturing industries. The statute defining the limitations of an administrative commission or body should not be so interpreted, if any other interpretation is permissible from the language used, as to defeat the practical application of the duties imposed on such body.

Whether the board has exercised wisdom in installing the particular industry proposed, or in determining the magnitude of that industry as proposed, are questions that courts should not attempt to review in the absence of a showing that the spirit of the statute, as well as the letter, has been violated. There are no facts alleged in the complaint, nor are there any statements in the resolution, which indicate that the board of corrections has abused or exceeded the powers granted to it by the sections of the statutes quoted. It conclusively appears that the labor of the prisoners is to be under the direct control of state officials and the work to be done is for the state and not for private individuals or private corporations.

The argument is stressed that certain individuals and corporations are engaged in the industry proposed in the resolution, and that of necessity the establishment of the same industry in the state prison will seriously interfere with the industry of those citizens. It was stated by counsel for plaintiff at the oral argument that between 50 and 60 per cent. of the class of goods proposed to be manufactured in the prison sold to and used by the citizens of the state is at present manufactured within the state; that the other 40 per cent. or more comes from outside of the state. It is clear, therefore, that the goods that will be produced by the manufacturing plant proposed to be installed in the prison walls will compete with that 40 per cent. rather than with the 60 per cent. Furthermore, the statute does not exclude every industry that may interfere with the established industries carried on by citizens; only that the industry or industries selected shall interfere as little as possible with the industries already established in the state. It would be difficult to conceive of any manufacturing industry that the prison officials could establish within the prison walls with the limited capital available that would not in some degree interfere with the established manufacturing industries carried on by some citizens of the state. In the final analysis, the prison officials are driven to this extremity: They must either keep the prisoners in idleness, except such incidental work as is to be done on the farm and around the

prison grounds, or they must establish some industry that will, in the very nature of things, be in competition with other industries of the state. That the Legislature never contemplated that the restriction or limitation found in the statute should deny to the board of control the right to establish an industry such as contemplated by the resolution under existing conditions is, in our judgment, too clear for serious argument. We are not unmindful of the accepted principle of law that an administrative body may exercise only such powers as are expressly delegated and as are necessary to carry into effect delegated powers. The wording of the section of the statute leaves no reasonable doubt of the legislative intent that persons convicted of crime should be kept at hard labor. Neither is there any doubt that the board of control is vested with discretionary powers in providing the means by which this legislative intent shall be carried into effect. The courts should not, and will not, therefore, interfere with those discretionary powers. *Farrely* v. *Cole*, 60 Kan. 356, 56 Pac. 492, 44 L. R. A. 464; 18 R. C. L. pp. 124, 125.

The demurrer is sustained, the alternative writ of prohibition heretofore issued quashed, and the proceeding dismissed.

THURMAN, FRICK, and CHERRY, JJ., concur.